BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
  fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
  achang@bottinilaw.com
Yury A. Kolesnikov (SBN 271173)
  ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002

COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
  jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
  mmolumphy@cpmlegal.com
Tyson Redenbarger (SBN 294424)
  tredenbarger@cpmlegal.com
Noorjahan Rahman (SBN 330572)
  nrahman@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| A.J., through her guardian, Aaron Johnson, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TIKTOK INC. and BYTEDANCE INC.,<br><br>Defendants. | Case No. _____<br><br>Class Action<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1.    Plaintiff A.J. ("Plaintiff"), a minor child, by and through her guardian, Aaron Johnson, individually and on behalf of all others similarly situated (the "Class," as defined in paragraph 50 below), files this class-action complaint against TikTok Inc. ("TikTok") and ByteDance Inc. ("ByteDance") (together, "Defendants") for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Plaintiff alleges the following (a) upon personal knowledge with respect to the matters pertaining to herself; and (b) upon information and belief with respect to all other matters, based upon, among other things, the investigations undertaken by Plaintiff's counsel. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## INTRODUCTION

2.    TikTok, a video-sharing social networking service, has enjoyed rapidly growing popularity among teenagers worldwide. In 2019, TikTok was named the 7th-most-downloaded mobile app of the decade.[1] By the end of 2019 — barely three years after its initial launch in China — TikTok was reported to have 800 million monthly active users around the world.[2] Over 41% of these users are aged between 16 and 24. And, of these users, 90% use TikTok daily. Teenagers are the demographical group targeted by TikTok.

3.    TikTok's popularity among teenagers is attributed to its design: TikTok is a short-format video app (the "TikTok App") that allows users to create fast, "fun" content accompanied by music.[3] Typically running between 15 and 60 seconds, the videos created in the TikTok App can incorporate music samples, stickers and other add-ons. TikTok encourages users to apply several face filters and stickers — with attractive labels such as "Beauty," "Trending," and "Funny" — that can impose graphic features onto the user's face

---

[1] Alison DeNisco Rayome, *10 Most-Downloaded Apps of the 2010s: Facebook Dominates the Decade*, CNet, Dec. 16, 2019.

[2] Andrew Meola, *Analyzing TikTok User Growth and Usage Patterns in 2020*, BUSINESS INSIDER, Feb. 12, 2020.

[3] Kaitlyn Wylde, *What Is TikTok? Every Teenager You Know Is On It & It's About To Be Huge*, BUSTLE, Jan. 18, 2019.

or graphically alter the users' facial features. The TikTok App also offers a face-tracker lens that detects and zooms in on a user's face.

4. In violation of the BIPA, however, Defendants collect, store, and use TikTok users' facial geometry every time they access TikTok's face filters, face stickers, or face-tracker lens on an image or video in which their faces appear. Defendants violate the BIPA because they fail to:

- obtain informed, written consent from TikTok users before collecting, storing or using their biometric information; and

- institute and maintain publicly-available retention schedules regarding TikTok users' biometric information.

5. On behalf of all similarly situated TikTok users, Plaintiff seeks an order: (a) enjoining Defendants from further unauthorized collection, storage, and use of Plaintiff's and other Class members' biometric information; (b) declaring that Defendants' conduct violates the BIPA; (c) awarding statutory damages to Plaintiff and other Class members; and (d) requiring Defendants to clearly and conspicuously disclose its written policy that sets forth its retention and use of Plaintiff's and other Class members' biometric information.

## PARTIES

### I. Plaintiff

6. Plaintiff A.J. is a minor. Having been residing in the Chicago area since birth, Plaintiff is a citizen of Illinois. Aaron Johnson is Plaintiff's guardian.

7. Plaintiff first downloaded the Musical.ly app ("Musical.ly App") and created a Musical.ly account in 2016, which became a TikTok account in 2018. Plaintiff also created another separate TikTok account. Since 2016, Plaintiff has regularly accessed her Musical.ly and TikTok accounts. Using the Musical.ly App and TikTok App, Plaintiff has created, uploaded, and posted videos on Musical.ly and TikTok that include images of her face. Plaintiff has also used Musical.ly's and TikTok's face filters, face stickers, and face-tracker lens when creating, uploading, and posting videos. Plaintiff did not know or expect that

Defendants would collect, store, and use her biometric identifier and biometric information when she used the Musical.ly App or TikTok App. If Plaintiff had known, Plaintiff would not have used the Musical.ly App or TikTok App or would not have used them as frequently as she did.

8.      Defendants have failed to provide notice to Plaintiff and her guardians that Defendants would collect, store, or use Plaintiff's biometric identifiers or biometric information. Defendants have also failed to provide notice to Plaintiff and her guardians regarding the specific purpose and length of time that Defendants would collect, store, or use Plaintiff's biometric identifiers or biometric information.

9.      Neither Plaintiff nor her guardians know of, or recall seeing, any retention schedule setting out the guidelines for Defendants to permanently destroy biometric identifiers or biometric information.

10.     Neither Plaintiff nor her guardians recall seeing the Terms of Service, Privacy Policy, or Privacy Policy for Younger Users upon registering for an account with TikTok or Musical.ly. Neither Plaintiff nor her guardians recall receiving any notification regarding any changes to these policies.

## II.     Defendants

### A.      TikTok Inc.

11.     Defendant TikTok Inc. is a California corporation with its headquarters in Culver City, California. TikTok maintains an office in Mountain View, California. TikTok first launched the TikTok App in 2017. In November 2017, TikTok's parent company, ByteDance Ltd., spent $1 billion to purchase Musical.ly Inc. In August 2018, the accounts in TikTok and Musical.ly were consolidated into one app — the TikTok App.

### B.      ByteDance Inc.

12.     Defendant ByteDance Inc. is a Delaware corporation with its headquarters in Palo Alto, California. ByteDance is a subsidiary of ByteDance Ltd., a Beijing-based company founded in 2012.

Class Action Complaint
Demand for Jury Trial

**JURISDICTION AND VENUE**

13.     This Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and members of the Class are citizens of different states from Defendants. And there are 100 or more Class members.

14.     Section 20 of the BIPA expressly authorizes"[a]ny person aggrieved by a violation of [BIPA]" to bring suit "in federal district court against an offending party." *See* 740 ILCS 14/20.

15.     This Court has personal jurisdiction over TikTok because it maintains an office in Mountain View — within the County of Santa Clara, over which this District presides. TikTok regularly conducts business in this District. This Court also has personal jurisdiction over ByteDance because it is headquartered in Palo Alto — within the County of Santa Clara, over which this District presides. ByteDance regularly conducts business in this District.

16.     Venue is proper in this Court under 28 U.S.C. § 1391 because (a) Defendants transact business in this District; (b) substantial events and transactions giving rise to this action took place in this District; and (c) many members of the Class reside in this District.

**INTRADISTRICT ASSIGNMENT**

17.     In compliance with Local Rule 3-2(b), Plaintiff requests that this action be assigned to the San Jose Division of this District because (a) TikTok maintains an office in Santa Clara County; (b) ByteDance maintains its headquarters in Santa Clara County; and (c) a substantial part of the events or conduct giving rise to the claims in this action occurred in the County of Santa Clara.

**THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT — BIPA**

**I.     Consumer Privacy Concerns Arising from Biometric Technology**

18.     "Biometrics" refers to unique physical characteristics used to identify an individual. One of the most prevalent uses of biometrics is in facial-recognition technology, which works by scanning an image for human faces, extracting facial feature data based on specific "biometric identifiers" (*i.e.*, details about the face's geometry as determined by facial

- 4 -
Class Action Complaint
Demand for Jury Trial

points and contours), and comparing the resulting "face template" (or "faceprint") against the face templates stored in a "face template database." If a database match is found, an individual may be identified.

19.     The use of facial recognition technology in the commercial context presents numerous consumer privacy concerns. During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, then-Senator Al Franken stated that "there is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop and carefully consider the way we use [it], it may also be abused in ways that could threaten basic aspects of our privacy and civil liberties." Senator Franken noted, for example, that facial recognition technology could be "abused to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."

20.     The Federal Trade Commission ("FTC") has raised similar concerns, and recently released a "Best Practices" guide for companies using facial recognition technology. In the guide, the FTC underscores the importance of companies obtaining affirmative consent from consumers before extracting and collecting their biometric identifiers and biometric information from digital photographs.

21.     As explained below, Defendants fail to obtain informed consent when they collect, store, and use Musical.ly and TikTok users' biometric information. Not only do the actions of Defendants contravene the FTC guidelines, they also violate the statutory privacy rights of Illinois residents.

## II.     Illinois's Enactment of the BIPA to Address Consumer Privacy Concerns

22.     In 2008, Illinois enacted the BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

23.     Section 15(b) of the BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first":

Class Action Complaint
Demand for Jury Trial

(l) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

24.     Section 15(a) of the BIPA also provides:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

25.     Defendants are "private entit[ies]" within the meaning of Section 10 of the BIPA:

"Private entity" means any individual, partnership, corporation, limited liability company, association, or other group, however organized.

*See* 740 ILCS 14/10.

26.     Section 20 of the BIPA provides a right of action to "[a]ny person aggrieved by a [BIPA] violation]," as well as "reasonable attorneys' fees and costs" to a prevailing plaintiff:

Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

Class Action Complaint
Demand for Jury Trial

(4) other relief, including an injunction, as the State or federal court may deem appropriate.

*See* 740 ILCS 14/20.

27.     As alleged below, Defendants' practices of collecting, storing, and using Musical.ly and TikTok users' biometric identifiers and information without informed written consent violate all three prongs of Section 15(b) of the BIPA. Defendants' failure to provide a publicly-available written policy regarding its schedule and guidelines for the retention and permanent destruction of TikTok users' biometric information also constitutes a separate and independent violation of Section 15(a) of the BIPA.

## FACTUAL ALLEGATIONS

### I.     The TikTok App and Its Predecessor, the Musical.ly App

28.     In 2014, Musical.ly Inc., a Shanghai, China-based company, launched a social-media video platform through the Musical.ly App. Like the TikTok App, the Musical.ly App allowed users to create and edit short videos accompanied by background music. Like the TikTok App, the Musical.ly App included several features, such as face filters and face stickers, that scanned the user's facial geometry.

29.     In 2016, ByteDance Ltd. — the Beijing, China-based parent company of TikTok and ByteDance — launched the TikTok App in China (where it was known as "Douyin"). Mirroring the Musical.ly App, the TikTok App allowed users to create and upload videos accompanied by background music with features such as face filters and face stickers.

30.     In 2017, ByteDance Ltd. acquired Musical.ly Inc. for $1 billion. Following the acquisition, Musical.ly was rebranded into TikTok.

31.     As a result of the rebranding, all Musical.ly accounts were consolidated into TikTok accounts. All Musical.ly and TikTok users began using the TikTok App on a single TikTok platform.

32.     Since the merger of the Musical.ly App into the TikTok App, TikTok's popularity among American teenagers has grown exponentially. As of November 2019, the

Class Action Complaint
Demand for Jury Trial

TikTok App has over 26.5 million United States-based users and was the most downloaded application on the Apple app store. Indeed, about 60% of United States-based users are between the ages of 16 and 24.[4]

33.     TikTok's popularity with younger users is by design. Once logged on, TikTok users are continuously fed a never-ending stream of videos based on the contents of the videos the users have previously watched and interacted with. TikTok utilizes an algorithm to engage users constantly and continuously:[5]

> TikTok is an app for making and sharing short videos. The videos are tall, not square, like on Snapchat or Instagram's stories, but you navigate through videos by scrolling up and down, like a feed ....

> Video creators have all sorts of tools at their disposal: filters as on Snapchat (and later, everyone else); the ability to search for sounds to score your video. ***Users are also strongly encouraged to engage with other users***, through "response" videos or by means of "duets" — users can duplicate videos and add themselves alongside. ...

> TikTok is, however, a free-for-all. It's easy to make a video on TikTok, not just because of the tools it gives users, but because of extensive reasons and prompts it provides for you. You can select from an enormous range of sounds, from popular song clips to short moments from TV shows, YouTube videos or other TikToks. You can join a dare-like challenge, or participate in a dance meme, or make a joke. Or you can make fun of all of these things.

> TikTok assertively answers anyone's *what should I watch* with a flood. In the same way, the app provides plenty of answers for the paralyzing *what should I post?* The result is an endless unspooling of material that people, ***many very young***, might be too self-conscious to post on Instagram, or that they never would have come up with in the first place without a nudge. It can be hard to watch. It can be charming. It can be very, very funny....

34.     To maintain constant and continuous user engagement, TikTok mines and collects extension data from users at real time as they access the TikTok App. Among the data mined is what users view, whom users follow, key words and sounds users search, and

---

[4] Greg Roumeliotis, *et al.*, *Exclusive: U.S. Opens National Security Investigation into TikTok – Sources*, REUTERS, Nov. 1, 2019.

[5] John Herrman, *TikTok Is Rewriting the World*, THE NEW YORK TIMES, Mar. 10, 2019.

Class Action Complaint
Demand for Jury Trial

contents users share with their friends. In short, TikTok's algorithm is constantly learning what content to deliver to its users to keep them engaged. This algorithm, which is known to be "eerily spot-on," is "a bit of a black hole" — TikTok "is pretty hush-hush about how [it] choos[es] to promote content."[6]

35.     TikTok users do not — and cannot — understand the type of information the TikTok App gathers on them. Had TikTok users known the extent of the data mining and collection conducted by TikTok, they would likely refrain from downloading or using the TikTok App or use it less frequently.

## II.     Privacy Concerns Over TikTok

36.     Given the nature of the TikTok App, and the extensive information it gathers from users, TikTok is a subject of concern for privacy violations.

37.     In February 2019, the FTC filed a complaint against TikTok for violating the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq.* TikTok settled the claim for $5.7 million — at that time, the largest penalty ever imposed for violations of COPPA.[7]

38.     In October 2019, members of the United States Senate requested that the Director of National Intelligence investigate TikTok as a "potential counterintelligence threat."[8]

39.     In November 2019, the United States government announced a national security review of TikTok's parent, ByteDance Ltd.'s acquisition of the Musical.ly App for $1

---

[6] Morgan Sung, *A Guide to Using TikTok's Algorithm to Watch Videos You Actually Like*, Mashable, Jan. 13, 2020.

[7] Lesley Fair, *Largest FTC COPPA Settlement Requires Musical.ly to Change Its Tune*, Federal Trade Commission (Feb. 27, 2019), *available at* https://www.ftc.gov/news-events/blogs/business-blog/2019/02/largest-ftc-coppa-settlement-requires-musically-change-its (last visited May 18, 2020).

[8] Alyza Sebenius, *TikTok Merits a National Security Investigation, Senators Say*, Bloomberg, Oct. 24, 2019.

Class Action Complaint
Demand for Jury Trial

billion.[9]

40.     Due to security concerns, the United States Armed Forces, Department of Homeland Security, and the Transportation Security Administration have barred their personnel from using TikTok.[10] The United States Congress is currently considering legislation that would ban all federal employees from using the TikTok App.[11]

41.     In May 2020, the Dutch data protection authority launched an investigation of TikTok's privacy practices, "amid concerns over the safety of children's data":[12]

> TikTok, ByteDance Ltd.'s social media app, faces an investigation by the Dutch data protection authority amid concerns over the safety of children's data.

> The watchdog said Friday that "a huge number of Dutch children clearly love using TikTok" and that an investigation is needed to check privacy settings.

> ... ***The regulator will examine whether the information provided to children using the app*** "***is easy to understand and adequately explains how their personal data is collected, processed and used***," Monique Verdier, deputy chairman of the Dutch authority said in a statement. They will also "***look at whether parental consent is required for TikTok to collect, store and use children's personal data***."

## III.     Defendants' Collection, Retention, and Use of Users' Biometric Identifiers and Biometric Information

42.     By design, the TikTok App can collect, store, and retain users' facial geometry, biometric identifiers, and biometric information. The TikTok App allows users to choose from several face filters and face stickers, and apply graphic animation effects to their faces that appear in a video or image. To encourage users to use these features, TikTok assigns them attractive labels, such as "Beauty," "Trending," and "Funny." In addition, the TikTok

---

[9] Jack Nicas, Mike Isaac, & Ana Swanson, *TikTok Said to Be Under National Security Review*, THE NEW YORK TIMES, Nov. 1, 2019.

[10] Mary Meisenzahl, *US Government Agencies Are Banning TikTok, the Social Media App Teens Are Obsessed with, Over Cybersecurity Fears — Here's the Full List*, BUSINESS INSIDER, Feb. 25, 2020.

[11] Alexandra S. Levine, *Senate Bill Would Ban TikTok on Federal Employees' Work Phones*, POLITICO, Mar. 12, 2020.

[12] Stephanie Bodoni, *TikTok Faces Dutch Privacy Probe Over Children's Data*, BLOOMBERG, May 8, 2020.

Class Action Complaint
Demand for Jury Trial

App provides users with the option to use a face-tracker lens that will detect and automatically zoom in on a user's face.

43.    Similar face filters, face stickers, and face-tracker lens features were available in and promoted by the Musical.ly App.

44.    Unbeknownst to the TikTok (and Musical.ly) users, when a user accesses the face filters, face stickers, and face-tracker features while creating, uploading, or posting a video or image containing his or her face, Defendants capture, collect, store, and retain a copy of the user's facial geometry, as well as all biometric identifiers and biometric information derived from this copy.

45.    Defendants' capturing, collection, storage, and retention of TikTok users' facial geometry, biometric identifiers, and biometric information violate the BIPA because they fail to provide notice to TikTok users and do not obtain their consent.

46.    TikTok's Privacy Policy for Younger Users (updated in January 2020) fails to adequately disclose the collection, retention, and use of facial geometry, biometric identifiers, and biometric information.[13] In fact, the Privacy Policy for Younger Users does not even mention facial geometry, biometric identifiers, and biometric information:

**What information do we collect from Younger Users?**

When a Younger User registers for TikTok, we collect only limited information, including username, password, and birthday.

We may also collect certain information automatically from the user's device, including internet or other network activity information such as device ID, IP address, web browser type and version, country-level location, as well as certain app activity data, such as video watches, time in the app, and general usage data.

47.    Defendants also violate the BIPA by failing to provide any information about the specific purpose and length of time for which they will retain TikTok users' facial geometry, biometric identifiers, and biometric information. In fact, no retention schedule is

---

[13] *Available at* https://www.tiktok.com/legal/privacy-policy-for-younger-users?lang=en (last visited May 18, 2020).

included in TikTok's terms of service or any online sources accessible by TikTok users.

48. Upon information and belief, TikTok transfers copies of the users' facial geometry, biometric identifiers, and biometric information to other corporate entities, including ByteDance.

49. Additionally, industry experts have discovered that TikTok appears to be harvesting biometric data in order to create a search function — allowing users to search TikTok videos based upon the individuals who appear in them.[14]

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed class (the "Class"), defined as:

> Any user of the Musical.ly App or the TikTok App, who, while residing in Illinois, used Musical.ly's or TikTok's face filters, face stickers, or the face-tracker lens on an image or video in which the user's face appeared.

Excluded from the Class are Defendants, any entity in which either Defendant has a controlling interest, and Defendants' legal representatives, officers, directors, employees, assigns and successors. Also excluded from the Class is any judicial officer and court staff assigned to this matter and the members of their immediate families.

51. **Numerosity Under Rule 23(a)(1)**. The members of the Class are so numerous that joinder of all members would be impracticable. Based on information and belief, Plaintiff alleges that the Class includes numerous members.

52. **Commonality and Predominance Under Rule 23(a)(2) and 23(b)(3)**. This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

(a) Whether Defendants collected or otherwise obtained the biometric identifiers or biometric information of Plaintiff and other Class members;

(b) Whether Defendants possessed the biometric identifiers or biometric

---

[14] Shubham Agarwal, *TikTok's Creepy New Feature Lets You Search for Videos Based on People's Faces*, DIGITAL TRENDS, Sept. 25, 2019.

Class Action Complaint
Demand for Jury Trial

information of Plaintiff and other Class members;

(c)     Whether Defendants disclosed or otherwise disseminated the biometric identifiers or biometric information of Plaintiff and the other Class members;

(d)     Whether Defendants profited from the biometric identifiers or biometric information of Plaintiff and other Class members;

(e)     Whether Defendants provided the notice required by the BIPA before collecting, storing, disclosing, or otherwise disseminating the biometric identifiers or biometric information of Plaintiff and other Class members;

(f)     Whether Defendants obtained enforceable written releases, as defined in the BIPA, from Plaintiff and other Class members or their authorized representatives before collecting, storing, disclosing, or otherwise disseminating the biometric identifiers or biometric information of Plaintiff and other Class members;

(g)     Whether Defendants had in place — and disclosed to the public — the written retention and destruction policies, schedules, or guidelines for permanently destroying biometric identifiers or biometric information, when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first as is required by the BIPA while in possession of Plaintiff's and other Class members' biometric identifiers or biometric information;

(h)     Whether Defendants complied with any such written policy (if one exists);

(i)      Whether Plaintiff and the Class members were harmed as a result of Defendants' conduct;

(j)     Whether Defendants protected Plaintiff's and the Class members' biometric identifiers or biometric information from disclosure using the reasonable standard of care within Defendants' industry and in a manner that was the same as or more protective than the manner in which Defendants protect other confidential

Class Action Complaint
Demand for Jury Trial

and sensitive information;

(k)     Whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages or any other monetary relief; and

(l)     Whether Plaintiff and other Class members are entitled to equitable relief.

53.     Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by Defendants' actionable conduct. Defendants' conduct that gave rise to Plaintiff's claims is the same for all members of the Class.

54.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and on behalf of the other Class members. Similar or identical statutory violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

55.     **Typicality Under Rule 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Class members because, among other things, (a) Plaintiff and the other Class members provided personal information to Defendants; and (b) in its uniform misconduct alleged above, Defendants shared the personal information of Plaintiff and other Class members without their authorization or consent. Plaintiff and other Class members are advancing the same claims and based on the same legal theories. There are no defenses that are unique to Plaintiff.

56.     **Adequacy of Representation Under Rule 23(a)(4)**. Plaintiff is an adequate representative of the Class because (a) her interests do not conflict with the interests of the other Class members she seeks to represent; (b) she has retained counsel competent and experienced in complex class action litigation, including data-privacy litigation; (c) she will prosecute this action vigorously; and (d) she has no interests that are contrary to, or in conflict with the interests of other Class members.

57.     **Superiority Under Rule 23(b)(3)**. A class action is superior to other

- 14 -
Class Action Complaint
Demand for Jury Trial

available methods for the fair and efficient adjudication of this controversy because joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There should be no difficulty in managing this action as a class action.

58.     Class certification is also appropriate under Rule 23(b)(2) because Defendants have acted or have refused to act on grounds generally applicable to the Class, so that corresponding declaratory relief is appropriate to the Class as a whole.

## CAUSES OF ACTION

### Count I
### Violation of 740 ILCS 14/10, *et seq.* for
### Failure to Obtain Informed, Written Consent

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.     The BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first: (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

61.     Defendants — both "private entit[ies]" within the meaning of the BIPA — captured, collected, stored, and used Plaintiff's and Class members' facial geometry, biometric identifiers, or biometric information.

62.     Defendants did not inform Plaintiff and other Class members in writing that their biometric identifiers or biometric information would be "collected and stored" as required under Section 15(b)(1) of the BIPA.

- 15 -
Class Action Complaint
Demand for Jury Trial

63. Defendants' practice of collecting, storing, and using Plaintiff's and other Class members' biometric identifiers or biometric information violated the BIPA.

64. Defendants' violations of the BIPA were intentional or reckless; in the alternative, Defendants were negligent.

65. As a result of Defendants' intentional or reckless violations of the BIPA, the Plaintiff and Class members already have been injured and will continue to be injured, in an amount to be proven at trial.

66. On behalf of herself and other Class members, Plaintiff seeks: (a) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and other Class members by requiring Defendants to comply with the BIPA; (b) statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to Section 20(2) of the BIPA, and statutory damages of $1,000 per negligent violation of the BIPA pursuant to Section 20(1) of the BIPA; and (c) reasonable attorneys' fees and costs and other litigation expenses pursuant to Section 20(3) of the BIPA.

**Count II**
**Violation of 740 ILCS 14/10, *et seq.* for**
**Failure to Institute and Maintain a Publicly-Available Retention Schedule**

67. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68. The BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first: (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

69. Defendants — both "private entit[ies]" within the meaning of the BIPA —

captured, collected, stored, and used Plaintiff's and Class members' facial geometry, biometric identifiers, or biometric information.

70. Defendants did not inform Plaintiff and other Class members in writing that their biometric identifiers or biometric information would be "collected and stored" as required under Section 15(b)(1) of the BIPA.

71. Nor did Defendants inform Plaintiff and Class members in writing of the "specific purpose and length of term for which [their] biometric identifier or biometric information is being collected, stored, and used" as required under Section 15(b)(2).

72. Defendants also failed to make available to the public, a written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information" as required under Section 15(a).

73. Defendants' practice of collecting, storing, and using Plaintiff's and other Class members' biometric identifiers or biometric information violated the BIPA.

74. Defendants' violations of the BIPA were intentional or reckless; in the alternative, Defendants were negligent.

75. As a result of Defendants' intentional or reckless violations of the BIPA, the Plaintiff and Class members already have been injured and will continue to be injured, in an amount to be proven at trial.

76. On behalf of herself and Class members, Plaintiff seeks: (a) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and other Class members by requiring Defendants to make publicly available a policy for the permanent destruction of biometric identifiers or biometric information pursuant to Section 15(a) of the BIPA; (b) statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to Section 20(2) of the BIPA, and statutory damages of $1,000 per negligent violation of the BIPA pursuant to Section 20(1) of the BIPA; and (c) reasonable attorneys' fees and costs and other litigation expenses pursuant to Section 20(3) of the BIPA.

///

Class Action Complaint
Demand for Jury Trial

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, through her guardian, on behalf of herself and all other similarly situated Class members, prays for judgment against Defendants as follows:

A.     Certifying this action as a class action, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as counsel for the Class;

B.     Finding that Defendants violated the BIPA in each of the causes of action set forth above;

C.     Awarding Plaintiff and the Class members statutory damages of $5,000 for each intentional or reckless violation of the BIPA, or in the alternative, for statutory damages of $1,000 for each negligent violation of the BIPA;

D.     Granting equitable, injunctive, and declaratory relief as may be appropriate;

E.     Awarding Plaintiff and the Class members attorneys' fees and costs as permitted by law;

F.     Awarding pre-judgment and post-judgment interest, as prescribed by law; and

G.     Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

Dated:  May 19, 2020

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:    (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
ykolesnikov@bottinilaw.com

COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
  jcotchett@cpmlegal.com
Mark C. Molumphy (SBN 168009)
  mmolumphy@cpmlegal.com
Tyson Redenbarger (SBN 294424)
  tredenbarger@cpmlegal.com
Noorjahan Rahman (SBN 330572)
  nrahman@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile:   (650) 697-0577

*Attorneys for Plaintiff and the Class*

Class Action Complaint
Demand for Jury Trial